UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENRIQUE MARRERO,<br><br>                            Plaintiff,<br><br>v.<br><br>TOWNSHIP OF NORTH BERGEN and THE NORTH BERGEN DEMOCRATIC MUNICIPAL COMMITTEE,<br><br>                            Defendants. | Civ. No. 14-cv-3482 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiff Enrique Marrero commenced this action against the Township of North Bergen ("North Bergen") and the North Bergen Democratic Municipal Committee ("the Committee"). Marrero, a Sergeant with the North Bergen Police Department, alleges that the defendants unlawfully retaliated against him after he announced his candidacy for the position of Hudson County Freeholder. His Complaint asserts claims under 42 U.S.C. § 1983 for violation of his First Amendment rights and conspiracy. By order and opinion dated July 31, 2015, I dismissed the original Complaint, which was replete with vague allegations against anonymous persons. (ECF nos. 20, 21) That dismissal was without prejudice to the filing of an amended complaint.

    Mr. Marrero has now filed an Amended Complaint ("AC", ECF no. 22), intended to remedy the fatal vagueness of the original complaint. Before the Court are the motions of North Bergen (ECF no. 26) and the Committee (ECF no. 25) to dismiss the Amended Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motions are DENIED.

1

## I. THE AMENDED COMPLAINT

The Amended Complaint alleges that defendants violated Marrero's First Amendment rights (Count One-42 U.S.C. § 1983) and conspired to do the same (Count Two). I summarize the allegations of the Amended Complaint, which must be taken as true for purposes of this motion only.

The plaintiff, Enrique Marrero, is a North Bergen Police Sergeant. (AC ¶1) On July 28, 2014, he filed a state court complaint against North Bergen and others, which was subsequently dismissed. (AC ¶2) This was an exercise of first amendment rights. (AC ¶8)

Sometime in 2014, Marrero announced his candidacy for the position of Hudson County Freeholder. (AC ¶6) His candidacy, he says, was perceived as an attempt to "buck[]" North Bergen's "political machine" which, he submits, exerts de facto control over the Township's government. (*Id.* at ¶7) Marrero contends that his entrance into the race "enraged the defendants" to such an extent that they "began a wholesale war" to "destroy his political and law enforcement career." (*Id.* at ¶9) He alleges that the defendants engaged in a campaign of harassment and retribution in order to intimidate the plaintiff and his supporters.

In early May, 2014, Marrero alleges, two North Bergen residents, Frankie Piazza and Pete Bourbon, told the owner of Bruins Bagel shop to remove a Marrero campaign sign from his window or else face "big problems." The shop owner refused. Piazza allegedly holds multiple jobs with the Town, and is alleged on information and belief to be the godson of the Committee Chairman, John Beluardo. (AC ¶ 10)

On May 7, 2014, Augusta Pavon and Oscar Torengra, who are employees of an Exxon station across from the high school, reported to the police that Marrero's campaign flyers had been removed from the gas station and destroyed. Marrero alleges that the culprit was Piazza.

On May 7, 2014, Aimee Focaraccio, whose mother is on the Committee, went to the residence of Jose Henriquez and Monica Aponte. Focaraccio told Henriquez to replace his Primary Election Column B sign (which includes Marrero) and to replace it with a "Sacco Team Column A" sign, or else he would face "problems." (AC ¶ 14)

In May 2014, when Marrero campaigned at or near the public schools, police were summoned to remove him. (AC ¶ 16)

In May 2014, at a monthly meeting of the Committee, the Mayor stated that Marrero had turned against the Committee, and encouraged anyone with negative information to file a complaint against Marrero. (AC ¶ 20) Thereafter, Focaraccio filed a false Internal Affairs Complaint against Marrero for "harassment." (AC ¶ 21) Piazza filed a false criminal assault complaint against Marrero, which resulted in a directed verdict of not guilty at the close of the State's case. (AC ¶ 22)

Marrero and his supporters witnessed violations and improprieties at the polls on primary election day in June 2014. (AC ¶ 23)

After he ran for Freeholder, Marrero was removed from his position in charge of the Junior Police Academy. (AC ¶ 18)

After Marrero lost the primary, a Captain and Lieutenant of the Police Department came to his home and personally delivered the message that he would be replaced in his Police position "in charge of the North Bergen Schools," which he had held since 2009. (AC ¶ 24) Officer Marina Fernandez, an open supporter of Marrero, was also reassigned and replaced. (AC ¶ 25)

Since June 2014, Marrero has allegedly been monitored in the hope that he would slip up. On June 26, 2014, Officer Reveron was repeatedly pressed in an effort to elicit that Marrero had signed in late, which was not correct. (AC ¶ 27) On June 27, 2014, Captain Lyons expressed annoyance at having to follow Marrero around. (AC ¶ 28) During the last municipal election, Marrero was

given indoor duty in an attempt to keep him from participating in the political process. (AC ¶ 29)

## II. LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

This discussion, written for the parties, assumes familiarity with my prior Opinion. (ECF no. 20).

Marrero sues under Title 42, United States Code, Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983 (emphasis added).

In my prior Opinion, I stated that no facts had been pled to suggest that the Committee acted under color of state law, an essential element of a § 1983 action. I noted, however, that there were cases in which a plaintiff had alleged that "the state had sufficiently involved political parties in the operation of primary elections so that the conduct of the party could be considered state action." *Valenti v. Pennsylvania Democratic State Comm.*, 844 F. Supp. 1015, 1017 (M.D. Pa. 1994).

As to North Bergen, my prior Opinion stated that no sufficient facts had been alleged to support an inference that Marrero's first amendment activity had been a motivating factor in any acts of retaliation. In addition, no sufficient connection had been drawn between such retaliatory acts and the Township.

The original complaint alleged generally that the "machine" pulls the strings. I found that to be too vague and general an allegation. Now there is more.

One of the campaign harassers, Piazza, has been identified as a North Bergen employee and a family relation of a Committee member. Another, Focaraccio, is a close family relation of a Committee member. A family connection (particularly as to unidentified persons, as in the original Complaint), would perhaps not suffice. But the actions themselves—intimidating persons, destroying campaign signs to help a political primary

5

rival, bringing allegedly false complaints—now provide context for the allegations.

Now it is alleged, not just that there is a "machine," but that a Committee meeting was attended by the Mayor of North Bergen, who encouraged the members to file complaints against Marrero. The stated rationale—that Marrero had "turned against" the Committee—could, if believed, suggest that the Mayor, on behalf of the Township, was making common cause with them. And allegedly false complaints, filed by Piazza and Focaraccio, followed.

The actions taken against Marrero were contemporaneous with or closely followed the primary campaign and election. That is very far from proof of first amendment retaliation. But considered in context, the alleged acts furnish the basis for a claim.

## IV.   CONCLUSION

For the foregoing reasons, the motions to dismiss filed by defendants, the Committee and North Bergen, are **DENIED**. Again, I emphasize the limited scope of my ruling. This opinion signifies only that the Amended Complaint contains allegations sufficient to permit it to go forward. Whether the allegations can be proven is a separate question, and one for another day.

An appropriate Order will issue.

Dated: April 6, 2016

_/s/ Kevin McNulty_
**KEVIN MCNULTY**
**United States District Judge**